UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BUCHWALD CAPITAL ADVISORS, LLC,
Litigation Trustee for the Greektown
Litigation Trust,

                Appellants,                Case No. 16-cv-13643

v.

                                      Paul D. Borman
                                      United States District Judge

SAULT STE. MARIE TRIBE OF CHIPPEWA
INDIANS; and KEWADIN CASINOS
GAMING AUTHORITY,

                Appellees.
_____

On Appeal From the United States Bankruptcy Court
For the Eastern District of Michigan

IN RE: GREEKTOWN HOLDINGS,
LLC,                                Bankr. Case No. 08-53104

                Debtor,              Bankr. Judge Walter J. Shapero
_____/
BUCHWALD CAPITAL ADVISORS, LLC,
solely in its capacity as Litigation Trustee for
the Greektown Litigation Trust,
                Plaintiff,           Adv. Pro. 10-05712
v.
DIMITROS ("JIM") PAPAS, et al.,
                Defendants.
_____/


OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT'S
SEPTEMBER 29, 2016 OPINION AND ORDER GRANTING THE TRIBE
DEFENDANTS' MOTION TO DISMISS AND DISMISSING THEM WITH
PREJUDICE FROM THE ADVERSARY PROCEEDING

1

**INTRODUCTION**

In this appeal, the Litigation Trustee seeks a reversal of the Bankruptcy Court's holding that the Appellees, the Sault Ste. Marie Tribe of Chippewa Indians ("the Tribe) and Kewadin Casinos Gaming Authority ("Kewadin Authority") (Appellees or collectively "the Tribe Defendants"), did not waive their sovereign immunity to the claims asserted in the Adversary Proceeding and dismissing them from the Adversary Proceeding. For the reasons that follow, the Court AFFIRMS the Bankruptcy Court and DISMISSES the Tribe Defendants from this Adversary Proceeding.

**I.      BACKGROUND**

**A.      Procedural History of this Adversary Proceeding**

On May 29, 2008, Greektown Holdings, LLC and certain affiliates (collectively the "Debtors"), commenced proceedings under Chapter 11 of the United States Bankruptcy Code, *In re: Greektown Holdings, LLC*, *et al., Debtors* (E. D. Mich. Bankr. No. 08-53104, ECF No. 1).[1] On or about May 28, 2010, this Adversary Proceeding was commenced, *The Official Committee of Unsecured Creditors on*

---

[1] The Debtors in the jointly administered cases are Greektown Holdings, L.L.C. ("Holdings"); Greektown Casino, L.L.C. ("Greektown Casino"); Kewadin Greektown Casino ("Kewadin"); Monroe Partners, L.L.C. ("Monroe"); Greektown Holdings II, Inc. ("Holdings II"); Contract Builders Corporation ("Builders"); Realty Equity Company Inc. ("Realty"); and Trappers GC Partner, LLC ("Trappers").

*Behalf of the Estate of Greektown Holdings, LLC*[2] *v. Dimitrios ("Jim") Papas, Viola Papas, Ted Gatzaros, Maria Gatzaros, Barden Development, Inc., Lac Vieux Desert Band of Lake Superior Chippewa Indians, Sault Ste. Marie Tribe of Chippewa Indians, Kewadin Casinos Gaming Authority, and Barden Nevada Gaming, LLC*, (E.D. Mich. Bankr. Adv. Pro. No. 10-05712).  The Complaint in the Adversary Proceeding alleges that $177 million was fraudulently transferred by the debtor, Greektown Holdings, LLC ("Holdings"), to the Defendants for no or inadequate consideration.  (Adv. Pro. ECF No. 1, Complaint.)[3]   The Complaint alleges that the fraudulent transfers from Holdings may be avoided and recovered under sections 544 and 550 of the Bankruptcy Code, 11 U.S.C. § 101, *et seq*., and under the Michigan Uniform Fraudulent Transfers Act ("MUFTA") (Mich. Comp. Laws § 566.31, *et seq*.).

Shortly after the Adversary Proceeding was commenced, on June 25, 2010, the Tribe Defendants filed a motion to dismiss the MUFTA claims against it on the

---

[2]  By Stipulation dated August 9, 2012 (and approved by Consent Order dated August 14, 2010) the Defendants agreed that Buchwald Capital Advisors LLC ("Buchwald"), in its capacity as the Litigation Trustee of the Greektown Litigation Trust and in its capacity as the Trustee of the Greektown General Unsecured Creditors Distribution Fund Trust , replace the Official Committee of Unsecured Creditors of Greektown Holdings, LLC (the "Committee") as Plaintiff in this Adversary Proceedings.  (Bankr. ECF. No. 3359, p. 3 ¶ 8.) When referring to docket entries in the underlying Bankruptcy Proceeding, (E. D. Mich. Bankr. No. 08-53104), the Court will use the reference "Bankr. ECF No. __."

[3]  When referring to docket entries in the MUFTA Adversary Proceeding, (Adv. Pro. No. 10-05712), the Court will use the reference "Adv. Pro. ECF No. __."

grounds of sovereign immunity.  (Adv. Pro. ECF No. 8.)  The parties stipulated to bifurcate the motion to dismiss to first have the Bankruptcy court decide the purely legal question of whether Congress, in Section 106(a) of the Bankruptcy Code, abrogated the Tribe's sovereign immunity and thereafter, if necessary, to decide whether the Tribe waived its sovereign immunity by participating in the Bankruptcy proceedings.  The Bankruptcy Court heard oral argument on the Congressional abrogation issue on December 29, 2010, and took the matter under advisement.

While the issue of Congressional abrogation of sovereign immunity was still under advisement in the Bankruptcy Court, in 2012, the Tribe Defendants and the Litigation Trustee reached a settlement, filed a motion to have the settlement approved and requested that the Bankruptcy Court hold off issuing its ruling on the Tribe's motion to dismiss pending a decision on the Settlement Motion.  This Court ultimately approved the Settlement Agreement, which contained a claims bar order that was an important aspect of the Settlement Agreement.  (*In re Greektown Holdings, LLC*, Case No. 12-12340, ECF No. 10, Opinion and Order Granting Corrected Motion for Order Approving Settlement Agreement.)

The non-settling Defendants in the Adversary Proceeding, Maria Gatzaros, Ted Gatzaros, Dimitrios Papas and Viola Papas ("the Papas and Gatzaros Defendants"), appealed the Court's Order approving the Settlement Agreement to the Sixth Circuit,

4

objecting to the inclusion of the claims bar order. (*In re Greektown*, No. 12-12340, ECF No. 33, Notice of Appeal.) The Sixth Circuit reversed and remanded with instructions to this Court to reconsider the propriety and breadth of the claims bar order. *Papas v. Buchwald Capital Advisors LLC (In re Greektown Holdings, LLC)*, 728 F.3d 567 (6th Cir. 2013). With the claims bar order under fire, the parties stipulated in this Court to withdraw the motion for an order approving the settlement and the proceeding before this Court was dismissed. (*In re Greektown*, No. 12-12340, ECF Nos. 48, 49, Stipulation and Dismissal.) The parties thereafter agreed to voluntary mediation before Bankruptcy Chief Judge Phillip Shefferly in an effort to resolve all of the claims against the all of the remaining Defendants in the MUFTA Adversary Proceeding. Despite their efforts under Judge Shefferly's guidance, the parties were unable to achieve a settlement of the Adversary Proceeding. (Adv. Pro. ECF No. 449, Mediator's Certificate, 6/2/2014).

On June 9, 2014, with settlement negotiations at a standstill, the Tribe Defendants renewed the 2010 motion to dismiss on the grounds of sovereign immunity. (Adv. Pro. ECF No. 453, Renewed and Supplemented Motion to Dismiss Adversary Proceeding Re: Sovereign Immunity.) The parties renewed their stipulation to have the Bankruptcy Court first determine whether Congress had abrogated the Tribe Defendant's sovereign immunity in section 106 of the Bankruptcy

Code and, only if no congressional abrogation was found, to then determine whether the Tribe Defendants had waived sovereign immunity for purposes of this MUFTA proceeding. On August 13, 2014, the Bankruptcy Court issued its Opinion and Order Denying the Tribe's Renewed and Supplemented Motion, concluding that "Congress sufficiently, clearly, and unequivocally intended to abrogate [the Tribe's] sovereign immunity in [section 106 of the Bankruptcy Code]." (Adv. Pro. ECF No. 474 at 36, August 12, 2014 Opinion and Order.) The Tribe Defendants appealed Bankruptcy Judge Walter Shapero's ruling and this Court reversed, holding that Congress did not unequivocally express its intent to abrogate sovereign immunity of Indian tribes in section 106 of the Bankruptcy Code. *In re Greektown Holdings, LLC*, 532 B.R. 680 (E.D. Mich. 2015). This Court remanded the matter to the Bankruptcy Court for further proceedings on the issue of whether the Tribe Defendants waived sovereign immunity, as outlined by the Bankruptcy Court in its December 23, 2010 Stipulated Order bifurcating the sovereign immunity issue.

On September 29, 2016, the Bankruptcy Court issued its Opinion and Order finding that the Tribe had not waived its sovereign immunity and granting the Tribe's motion to dismiss for lack of jurisdiction on the basis of sovereign immunity. *In re Greektown Holdings, LLC*, 559 B.R. 842 (E.D. Mich. Bankr. 2016). The Litigation Trustee has now appealed the Bankruptcy Court's September 29, 2016 Opinion and

Order.  This Court heard oral argument on the waiver appeal on April 10, 2017.

Following the hearing and while the matter was still under advisement, the Litigation

Trustee and the Tribe Defendants participated in a global facilitation effort, along with

the Papas and Gatzaros Defendants, under the direction of retired United States

District Court Judge Gerald Rosen.  On September 26, 2017, the parties notified the

Court that those efforts were unsuccessful in resolving the matter, thus necessitating

this Court's resolution of the Litigation Trustee's appeal of Judge Shapero's

September 29, 2016 Opinion and Order finding no waiver of sovereign immunity by

the Tribe Defendants and dismissing the Tribe Defendants from the MUFTA

Adversary Proceeding.

### B.    The Bankruptcy Court's September 29, 2016 Opinion and Order

The Bankruptcy Court concluded that *Memphis Biofuels, LLC v. Chickasaw*

*Nation Indus., Inc.*, 585 F.3d 917 (6th Cir. 2009), in which the Sixth Circuit held that

where a tribal charter requires board approval to waive sovereign immunity, nothing

short of such an express approval will operate to waive tribal immunity, foreclosed the

Litigation Trustee's MUFTA proceeding against the Tribe Defendants.  559 B.R. at

846-48.  Judge Shapero reasoned that because it is undisputed that the governing

charter here required a board resolution waiving sovereign immunity as to the

MUFTA claims, and it is also undisputed that no such resolution was adopted, and

because it is likewise undisputed that the Tribe did not enter into any contract or agreement by which it expressly agreed to waive sovereign immunity as to the MUFTA claims, *Memphis Biofuels* precluded any suit against the Tribe Defendants to which the Tribe's board had not expressly consented by board resolution. *Id*. Judge Shapero reasoned that because *Memphis Biofuels* held that "unauthorized acts of tribal officials are insufficient to waive tribal sovereign immunity," no conduct of the Tribe short of an express board resolution could serve to waive the Tribe Defendant's sovereign immunity.

Judge Shapero further held, rejecting the Litigation Trustee's alternative argument that the Tribe Defendants waived sovereign immunity by participating in the underlying Bankruptcy proceeding, that the "Tribe Defendants' participation in the claims allowance and confirmation process has not, as a matter of law, constituted a waiver of sovereign immunity that is broad enough to encompass this entire adversary proceeding against them, which seeks to recover alleged fraudulent transfers." 559 B.R. at 849-50. The Bankruptcy Court extended this holding and found that even if, as alleged by the Litigation Trustee, the Tribe Defendants caused the Debtors to file the Bankruptcy Petition in this action, the Tribe did not thereby waive its sovereign immunity to the MUFTA adversary proceeding filed against them. *Id*. at 851-52.

## C.     Factual Background as Relevant to This Appeal

It is undisputed, as alleged in the Complaint in this Adversary Proceeding, that the Tribe Defendants have appeared and participated in the claims allowance process in the underlying Greektown Bankruptcy proceedings (Bankr. Case No. 08-53104) by filing certain proofs of claim (*see, e.g.*, Bankr. ECF Nos. 263, 280, 282, 325, 2314) and by filing appearances and objections in that proceeding (*see, e.g.*, Bankr. ECF Nos. 706, 751,1404, 1654, 1990, 2236).[4] Each of the Notices of Appearance filed by the Tribe Defendants in the underlying Greektown Bankruptcy proceedings expressly stated that the Tribe Defendants did not thereby consent to the exercise of jurisdiction over them and specifically reserved the right to assert all affirmative defenses, including lack of subject matter jurisdiction.  (*See ibid*; Adv. Pro. ECF No. 649-1, Tribe Defs.' Mot. to Dismiss at 13.)  Likewise, the Tribe Defendants' Objections filed in the underlying Greektown Bankruptcy proceedings also expressly sought to preserve the Tribe Defendants' right to assert all available affirmative defenses, resulting in the final Plan Confirmation Order acknowledging that the Tribe Defendants are not deemed to have waived or released their right to assert all available defenses in any potential avoidance claim filed against them.  (Bankr. ECF No. 2046,

---

[4] When referring to docket entries in the underlying Greektown bankruptcy case, (Bankr. No. 08-53104), the Court will use the reference "Bankr. ECF No. __."

Order Confirming Second Amended Joint Plans; Adv. Pro. ECF No. 649-1, Tribe

Defs.' Mot. to Dismiss at 13.)

Also undisputed is the fact that the Tribe's governing Tribal Code (which

applies equally to the Kewadin Gaming Authority, an instrumentality of the Tribe

established pursuant to the Gaming Authority Charter and defined as a "Tribal Entity"

pursuant to the Tribal Code) expressly defines the limited conditions under which the

Tribe Defendants may waive their sovereign immunity. (Adv. Pro. ECF No. 649-1,

Ex. A, Affidavit of Candace Blocher, Exs. B, C, Chapters 44 and 94 respectively of

the Tribal Code.)[5] The Tribal Code provides in relevant part that "[t]he sovereign

immunity of the Tribe, including sovereign immunity from suit in any state, federal

or tribal court, is hereby expressly reaffirmed unless such immunity is waived in

accordance with '44.105 or '44.108." (*Id.* § 44.104.) Section 44.105 provides in

relevant part that the sovereign immunity of the Tribe may be waived "(a) by

resolution of the Board of Directors expressly waiving the sovereign immunity of the

Tribe and consenting to suit against the Tribe in any forum designated in the

_____

[5] The Chapter of the Tribal Code directly addressing waiver of tribal immunity in commercial transactions delineates the characteristics that define a "Tribal Entity," and expressly provides that "[f]or purposes of this Chapter, corporations, partnerships, limited liability companies, or similar entities formed under the laws of any State shall not be Tribal entities; provided, that this provision shall not affect the sovereign immunity of the Tribe with regard to any such State entity." (Adv. Pro. ECF No. 649-6, Tribal Code, Chapter 44, Section 44.103.)

resolution; <u>provided</u>, that any such waiver shall not be general but shall be specific and limited as to duration, grantee, transaction, property or funds of the Tribe subject to the waiver, court having jurisdiction and applicable law . . . or (b) by a Tribal entity exercising authority expressly delegated to such entity in its charter or specially by resolution of the Board of Directors . . . ." (Tribal Code § 44.105(1)(a)(b).) Section 44.108 provides a waiver of sovereign immunity "for any claim sounding in contract" arising from an express, written, and signed contract involving a proprietary function of the Tribe."

It is also undisputed that: (1) there is no Board resolution waiving the Tribe Defendants' tribal immunity and consenting to suit on the claims asserted in this MUFTA Adversary Proceeding; and (2) there is no contract containing a provision purporting to waive the Tribe Defendants' tribal immunity as to the claims asserted in this MUFTA Adversary Proceeding.

In addition to these undisputed facts, the Litigation Trustee asserts that certain conduct of the Tribe Defendants establishes that the Tribe Defendants exerted complete dominion and control of the Debtors, used the Debtors as their agents in connection with the fraudulent transfers alleged in this Adversary Proceeding and directed the Debtors to initiate the underlying Bankruptcy proceedings in order to forestall an action by the Michigan Gaming Control Board ("MGCB") against the

Tribe Defendants, thereby becoming one with the Debtors under principles of agency and alter ego/piercing the corporate veil. While the Tribe Defendants do not concede the truth of these allegations they do accept them, as did Judge Shapero, solely for purposes of resolving the legal waiver issues presented in this appeal. Judge Shapero accepted "as true," and so does this Court in reviewing his Opinion and Order, that "the Tribe Defendants' pre-petition and post-petition conduct as relates to the Debtors amounts to pervasive dominion and control and went well beyond filing proofs of claim or other litigation conduct." (*In re Greektown Holdings*, 559 B.R. at 852-53.)

## II.   JURISDICTION AND STANDARD OF REVIEW

The parties do not dispute this Court's jurisdiction to entertain the Litigation Trustee's appeal. Under 28 U.S.C. § 158(a)(1), this Court has jurisdiction to hear appeals "from final judgments, orders, and decrees" issued by the Bankruptcy Court. Judge Shapero's Order granting the Tribe Defendants' Motion to Dismiss results in the Bankruptcy Court's dismissal of the remaining Defendants in the underlying Adversary Proceeding. In a separate Opinion and Order issued this same day, the Court addresses an appeal of the Bankruptcy Court's earlier dismissal of the Papas and Gatzaros Defendants. A ruling on a motion to dismiss a bankruptcy court adversary proceeding is reviewed *de novo*. *In re Grenier*, 430 B.R. 446, 449 (E.D. Mich. 2010) (citing *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)).

12

The Tribe moves under Fed. R. Civ. P. 12(b)(1) to dismiss the Complaint in the Adversary Proceeding for lack of subject matter jurisdiction based on sovereign immunity. *See Memphis Biofuels*, 585 F.3d at 919-20 (noting that a motion to dismiss on the basis of sovereign immunity tests the Court's subject matter jurisdiction to entertain the action). The party invoking federal subject matter jurisdiction, here the Litigation Trustee, bears the burden of proving it. *Dismas Charities, Inc. v. U.S. Dept of Justice*, 401 F.3d 666, 671 (6th Cir. 2005); *3D Systems, Inc. v. Envisiontec, Inc.*, 575 F. Supp. 2d 799, 803 (E.D. Mich. 2008) (observing that plaintiff bears the burden of proving jurisdiction in order to defeat a motion by defendant challenging the court's subject matter jurisdiction).

Challenges to subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) "come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prod., Inc. v. Sherwin–Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). Under a facial attack, all of the allegations in the complaint must be taken as true, much as with a Rule 12(b)(6) motion. *Gentek*, 491 F.3d at 330 (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). Under a factual attack, however, the court can actually weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction. "Where. . . there is a factual attack on the subject-matter jurisdiction alleged in the complaint, no presumptive truthfulness

applies to the allegations" and "the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts." *Id*.

## III.   ANALYSIS

Counsel for the Litigation Trustee succinctly stated at the April 10, 2017 hearing the "issue of first impression" presented in this appeal: whether principles of alter-ego/piercing the corporate veil and/or agency can be applied to find a waiver by conduct of an Indian tribe's sovereign immunity. The Litigation Trustee submits that the Debtors in the underlying Greektown bankruptcy proceedings were the "mere instrumentalities" of the Tribe Defendants, and were "dominated and controlled" by the Tribe Defendants both before and after the bankruptcy filings and used by the Tribe Defendants to initiate the Greektown bankruptcy proceedings to avoid an action by the MGCB to force the Tribe Defendants to relinquish their interest in Greektown Casino. The Tribe Defendants, and Judge Shapero, accepted as true, solely for purposes of determining the legal issue of whether the Tribe Defendants could be found to have waived their tribal immunity under an alter ego or agency theory, the facts and inferences alleged by the Litigation Trustee regarding the Tribe Defendants' domination and control over the Debtors. The Tribe Defendants submit that, as a matter of law, even assuming the veracity of the allegations that they "dominated and

controlled" the Debtors, they cannot be deemed to have waived their sovereign immunity based upon such conduct.

### A. *Memphis Biofuels* Applies Here and Supports Judge Shapero's Finding of No Waiver

"As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.*, 523 U.S. 751, 754 (1998). Tribal sovereign immunity is a matter of common law, a judicially created doctrine, not deriving from the Eleventh Amendment or an act of Congress. *Id*. at 756. "[A] tribe may choose to expressly waive its tribal-sovereign immunity either in its charter or by agreement." *Memphis Biofuels*, 585 F.3d at 921 (citing *Kiowa*, 523 U.S. at 754). In *Memphis Biofuels*, the tribe's charter (like the Tribal Code here) required board approval to effect a waiver of sovereign immunity. 585 F.3d at 921. Although the parties had signed a contractual waiver provision by which both parties waived all immunities, and plaintiff believed that the Chickasaw Nation had obtained the requisite board approval, in fact no board approval had been obtained. 585 F.3d at 922. Despite the written waiver signed by the parties, the Sixth Circuit held that "regardless what MBF may have thought, board approval was not obtained, and CNI's charter controls. . . . [and] without board approval, CNI's sovereign immunity remains

15

intact." *Id.* The Sixth Circuit refused to apply equitable doctrines to find waiver based on the parties' written agreement that expressly granted waiver, holding that "unauthorized acts of tribal officials are insufficient to waive tribal-sovereign immunity." *Id.* The Sixth Circuit concluded that the tribe's "charter controls, and, without board approval, the waiver agreement in insufficient." *Id.* The Sixth Circuit observed that:

> This result may seem unfair, but that is the reality of sovereign immunity: "[I]mmunity can harm those who . . . are dealing with a tribe . . . . These considerations might suggest a need to abrogate tribal immunity, [but] . . . we defer to the role Congress may wish to exercise in this important judgment.

585 F.3d at 922 (alterations and ellipsis in original).

As Judge Shapero correctly noted, in this case it is undisputed that the Tribe Defendants' Tribal Code and Charter required a narrowly tailored board resolution specifically waiving sovereign immunity for an identified limited purpose. It is also undisputed that no such board resolutions were ever adopted. 559 B.R. at 845-46. It is also undisputed that the Tribe Defendants never entered into any contract as relevant here that contained any provision purporting to waive sovereign immunity, conduct that could arguably fall within the waiver provision contained in Section 44.108 of the Tribal Code. *Id.* at 846.

This would seem to end the matter given the clear line adopted by the Sixth

Circuit in *Memphis Biofuels*.  However, the Litigation Trustee suggests *Memphis Biofuels* applies only to contractual waivers of sovereign immunity in the absence of a duly authorized tribal board resolution.  (ECF No. 9, Appellant's Br. 21.) The Litigation Trustee argues that in *Memphis Biofuels*, the Sixth Circuit was simply unwilling to apply equitable quasi-contractual remedies where the parties were fully capable of obtaining the required tribal resolution before proceeding with a contractual agreement. (*Id*. at 25-27.)  Here by contrast, the Litigation Trustee urges, where the MUFTA claims sound in tort, not contract, the Plaintiff could not possibly obtain and perfect tribal board resolution, and "*Memphis Biofuels* is simply inapplicable." (*Id*. at 27.)  The Court disagrees.

Importantly, the Litigation Trustee has not cited a single case that makes this contract/tort distinction in analyzing a waiver of the sovereign immunity of an Indian tribe. *Memphis Biofuels* makes no such distinction, nor do the cases relied upon by the Sixth Circuit in that case which also broadly hold that a waiver of tribal sovereign immunity must be clear and unequivocal and cannot be implied from conduct.  For example, in *Sanderlin v. Seminole Tribe of Florida*, 243 F.3d 1282 (11th Cir. 2001), discussed at some length by the Sixth Circuit in *Memphis Biofuels*, the court held that no waiver of tribal sovereign immunity as to a discrimination claim under the Rehabilitation Act could be implied based upon the tribe's conduct in accepting

17

federal funds. In *Sanderlin*, as here, the tribe's governing ordinance expressly required a duly-enacted tribal council resolution to effect a waiver of the tribe's sovereign immunity. The Court reasoned that even if the tribe had implicitly promised not to discriminate in exchange for receiving federal funds, such conduct would "in no way constitute an express and unequivocal waiver of sovereign immunity and consent to be sued." 243 F.3d at 1289. Nor was the court willing to apply agency principles of actual or apparent authority to find waiver of "a Native American tribe's assertion of sovereign immunity" with respect to plaintiff's discrimination claim. *Id*. at 1288. The Eleventh Circuit observed and adhered to the Supreme Court's "plain" directive that "waivers of tribal sovereign cannot be implied on the basis of a tribe's actions, but must be unequivocally expressed." *Id*. at 1286.

The Sixth Circuit in *Memphis Biofuels*, like the Eleventh Circuit in *Sanderlin*, expressly declined to apply equitable doctrines such as apparent authority to find a waiver of tribal of immunity and adhered instead to Supreme Court precedent dictating that tribal sovereign immunity cannot be waived (and particularly in the face of a tribal charter that specifically describes the means by which the tribe's immunity can be waived) without clear and express language effecting that waiver. Although *Memphis Biofuels* was a case sounding in contract, not tort, the Sixth Circuit did not mention and therefore gave no import to such a distinction. Nor did the cases on

which the Sixth Circuit relied in *Memphis Biofuels*, similarly rejecting such implied waiver, suggest the significance of such a distinction.

In *Furry v. Miccosukee Tribe of Indians of Florida*, 685 F.3d 1224 (11th Cir. 2012), the Eleventh Circuit relied on *Sanderlin* in a tort case and refused to find that an Indian tribe had waived its sovereign immunity to a wrongful death claim through its conduct in applying for a state liquor license. The court refused to find an implied waiver of tribal immunity in an action against the tribe for over-serving alcohol to a young woman in violation of state dram shop laws, resulting in her tragic death in an automobile accident. Relying on some of the same cases cited by the Sixth Circuit in *Memphis Biofuels* the Eleventh Circuit reasoned:

> Also without merit is Furry's claim that the Miccosukee Tribe waived its immunity from private tort actions by applying for a state liquor license. As we have recognized on many occasions, "[t]he Supreme Court has made it plain that waivers of tribal sovereign immunity cannot be implied on the basis of a tribe's actions, but must be unequivocally expressed." *Sanderlin [v. Seminole Tribe of Florida*, 243 F.3d 1282] at 1286 [(11th Cir. 2001)] (quoting *[Florida v.] Seminole Tribe [of Fla.]*, 181 F.3d [1237] at 1243 [(11th Cir. 1999)]; *see Santa Clara Pueblo [v. Martinez]*, 436 U.S. [49] at 58 [] [(1978)]) (noting that waivers of sovereign immunity 'cannot be implied but must be unequivocally expressed' . . . a contrary conclusion would be 'no more than a misuse of the word 'express,' defined as '[m]anifested by direct and appropriate language, as distinguished from that which is inferred by conduct.')

685 F.3d at 1235.

The Litigation Trustee fails to support its contract/tort distinction with any

persuasive authority and admits that it can point to no "direct and appropriate [waiver] language," as distinguished from conduct, in this case. A tribal board resolution waiving the Tribe Defendants' immunity to suit based on the claims asserted in this MUFTA Adversary Proceeding was required by the Tribe Defendants' Tribal Code and one was not obtained. The Litigation Trustee offers no persuasive authority for adopting a bright-line rule distinguishing cases sounding in contract from cases sounding in tort when analyzing a waiver of tribal immunity. This Court is cognizant of the fact that continued adherence to the extreme breadth of an Indian tribe's sovereign immunity has been questioned, both by the Supreme Court and the Sixth Circuit and other courts interpreting Supreme Court mandate. As the Sixth Circuit remarked in finding no waiver in *Memphis Biofuels*: "This result may seem unfair, but that is the reality of sovereign immunity: '[I]mmunity can harm those who . . . are dealing with a tribe . . . . These considerations might suggest a need to abrogate tribal immunity, [but] . . . we defer to the role Congress my wish to exercise in this important judgment.'" *Memphis Biofuels*, 585 F.3d at 922 (quoting *Kiowa*, 523 U.S. at 758). The Eleventh Circuit expressed a similar sentiment in *Furry* in upholding tribal immunity:

> Cobbling together a new exception to tribal immunity would directly
> conflict with the Supreme Court's straightforward doctrinal statement,
> repeatedly reiterated in the holdings of this Circuit, that an Indian tribe

is subject to suit in state or federal court "*only where* Congress has authorized the suit or the tribe has waived its immunity." . . . Waiver . . . occurs when the tribe itself consents to the jurisdiction of the state or federal courts, through for example, a provision in a commercial contract.  Moreover, both abrogation and waiver require the use of express and unmistakably clear *language* by either Congress or the tribe . . . .

*   *   *

The doctrine of tribal sovereign immunity may well be anachronistic and overbroad in its application, especially when applied to shield from suit even the most sophisticated enterprises of Indian tribes, including commercial activities – such as the sale of alcohol – that have obvious and substantial impacts on non-tribal parties.  But it remains the law of the land until Congress or the Supreme Court tells us otherwise.

685 F.3d at 1236-37 (second emphasis added).  These cases cast significant doubt on the validity of the bright-line contract/tort distinction that the Litigation Trustee asks this Court to draw.  The Court therefore rejects the Litigation Trustee's blanket proposition that *Memphis Biofuels* simply "does not apply here" and finds that *Memphis Biofuels* does apply here and supports Judge Shapero's finding of no waiver in the absence of a board resolution expressly waiving immunity with respect to the fraudulent conveyance claims asserted against the Tribe Defendants in this Adversary Proceeding.

**B.** **Even Assuming a Limited "Waiver by Litigation Conduct" Has Been Recognized and Applied to Indian Tribes, the Only Litigation Conduct Attributable to the Tribe Defendants Here Would Not Support a Finding of Waiver With Respect to the Claims Asserted in This MUFTA Adversary Proceeding.**

The Litigation Trustee insists that *Memphis Biofuels* cannot stand for the hard and fast proposition proffered by the Tribe Defendants, i.e. that *only* a duly adopted board resolution (where one is required by the tribal charter) will be sufficient to effect a waiver of tribal sovereign immunity, in light of Supreme Court precedent recognizing a limited waiver of sovereign immunity based on "litigation conduct." The Litigation Trustee argues that the Tribe Defendants have waived their sovereign immunity to the claims asserted against them in this MUFTA adversary proceeding, by their affirmative conduct in filing proofs of claim, appearances, and objections in the underlying bankruptcy proceeding and by operating as the alter ego of the Debtors and causing the Debtors to file the underlying bankruptcy petition. The Court disagrees.

**1.** **Judge Shapero correctly concluded that "[t]he Tribe Defendants' participation in the claims allowance and confirmation processes has not, as a matter of law, constituted a waiver of sovereign immunity that is broad enough to encompass this entire adversary proceeding against them, which seeks to recover alleged fraudulent transfers."**

The Litigation Trustee asserts that, like States, the Tribe waives its sovereign immunity when it takes the affirmative step of filing a claim (here proofs of claim in

the bankruptcy proceeding) in court. There is ample support for the Litigation Trustee's assertion that a *State* may waive its sovereign immunity when it files a proof of claim in a bankruptcy proceeding. *Gardner v. New Jersey*, 329 U.S. 565, 573-74 (1947) ("It is traditional bankruptcy law that he who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide the consequences of that procedure. . . . [and] [w]hen the State becomes the actor and files a claim against the fund it waives any immunity which it otherwise might have had respecting the adjudication of the claim.") (alterations added). It is equally well established that such waiver is limited to a very narrow set of circumstances. *See, e.g., In re Rogers*, 212 B.R. 265, 276 (E.D. Mich. 1997) ("Relying on *Gardner*, the Court finds that the MESA has not consented to this preference action because resolution of the preference action is not part of adjudicating the proofs of claim that the MESA filed. . . . A different result would transform MESA's proofs of claim into a lawsuit against the MESA which seeks a monetary judgment from the State treasury over and above the resolution of the proofs of claim.").

The Tribe asserts that the waiver by litigation conduct rule, which the Tribe acknowledges has been applied to defeat a State's assertion of Eleventh Amendment sovereign immunity in certain limited circumstances, is wholly inapplicable to Indian Tribes. The Tribe relies on *Oklahoma Tax Comm'n v. Citizen Band Potawatomi*

*Indian Tribe of Oklahoma*, 498 U.S. 505 (1991), in which the Supreme Court established that an Indian tribe possesses immunity from a direct action against it and also possesses immunity from cross-claims against it. However, there is authority to support the argument that a narrow recoupment exception could apply to Indian tribes. *See, e.g., Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324 (10th Cir. 1982) (finding that tribe waived sovereign immunity by filing suit but the waiver was limited to adjudicating claims for "recoupment - arising out of the same transaction or occurrence which is the subject matter of the [tribe's] suit . . . but the [tribe] does not waive immunity as to claims which do not meet the 'same transaction or occurrence test' nor to claims of a different form or nature than that sought by it as plaintiff.").

Thus, even assuming that the Tribe Defendants could be held subject to the "waiver by litigation conduct" rule based upon their filing proofs of claim, appearance, and objections (each of which expressly denied waiver and reserved the Tribe Defendants' rights to assert the defense of sovereign immunity) in the underlying bankruptcy proceeding, the law is clear that such waiver would be limited to adjudication of the matters raised by its proofs of claim.

The Litigation Trustee does not appear to disagree with this limiting principle, conceding at the hearing before Judge Shapero the following:

Where a tribe files a simple proof of claim we would agree. As a general rule the filing of the proof of claim, or even initiation of an adversary proceeding is a limited waiver of immunity and only with respect to that claim or that – the affirmative allegations alleged by the tribe in the adversary proceeding, not counter claims itself. As I said before, may be set off or recoupment claims.

(Bankr. ECF No. 742, Transcript of January 14, 2016 Hearing on Tribe Defendants'

Motion to Dismiss at 24:22-25:3.)

Thus, it is agreed that any limited waiver that arguably would flow from the

Tribe Defendants' actual conduct/participation in the underlying Bankruptcy

proceeding would not encompass a waiver of immunity to the claims asserted in this

Adversary Proceeding. Accordingly, the Litigation Trustee is forced to rely on the

conduct of the Debtors, which brings us to the heart of this appeal. Counsel for the

Litigation Trustee explained at the hearing before Judge Shapero that

[g]enerally the filing of a proof of claim in a bankruptcy case waives immunity only with respect to the claims that arise from that proof of claim. . . . And the tribe Defendant[s] filed a proof of claim and the application for an administrative expense and – and so they put these in issue[].

But as we said back in 2010 and have consistently said, this case is not simply about the tribe defendants' filed proof of claim or their application for rounds [sic] of administrative expense claim. We have always asserted that the tribe defendants' pervasive involvement in the events leading up to and after the bankruptcy filings go beyond the simple act of filing proofs of claim. . . . It's the filing of the bankruptcies themselves. The events leading up to that absolutely. But the filing of the case itself, not just in the proof of claim, but the filing of the

overarching umbrella that is this bankruptcy case.

(Bankr. ECF No. 742, 1/14/16 Hr'g Tr. 22:19-23:5; 23:25-24:3.)

Of course the Tribe Defendants are not among the Debtors in the underlying bankruptcy proceedings; the Tribe Defendants did not initiate "the overarching umbrella that is this bankruptcy case." And so, to even proceed on the theory that filing the "overarching" bankruptcy case would amount to a waiver as to these MUFTA claims under the limited doctrine of "waiver by litigation" discussed in the cases cited *supra*, the Litigation Trustee is forced to rely on equitable principles of alter-ego/veil piercing and/or agency to attribute the conduct of the Debtors to the Tribe Defendants:

> The – the conduct of the debtors should be applied to the tribe defendants. . . .[B]y filing the case [the Tribe Defendants] have essentially embraced all of the actions that can be brought under that case, that's right. . . . [I]f they're willing to stipulate to that, you know, we'll ride that – that's – we'll ride that horse. I don't think we need the alter ego or piercing the corporate veil issues. . . . But if the tribe is unwilling to stipulate that they initiated the bankruptcy cases, we have to establish that conduct in an alternative way. And that is by establishing the debtors were the alter ego of the tribe defendants or that the defendants – or the debtors' corporate veil should be pierced. Because then for all intents and purposes the tribe is the debtor. The conduct of the debtor is the conduct of the tribe, it's one. It's not implicit, it's not by implication, it is their conduct.

(Bankr. ECF No. 742, 1/14/16 Hr'g Tr. 23:19-21, 26:11-27:2.)

**2.      No court has ever applied the equitable doctrine of alter-ego/veil**

26

**piercing to find a waiver of an Indian tribe's sovereign immunity and Supreme Court precedent precludes this Court from creating such a doctrine which necessarily finds an implied waiver by conduct.**

Success on this theory requires a finding that the Tribe Defendants' conduct in allegedly controlling the Debtors and causing the Debtors to initiate the underlying bankruptcy proceedings amounts to a waiver of the Tribe Defendants' sovereign immunity to the fraudulent transfer claims at issue in this Adversary Proceeding. The Litigation Trustee would like the Court to reach this finding of waiver through two distinct analytical steps: first, find that the Tribe Defendants exerted such dominion and control over the Debtors that the conduct of the Debtors could be attributed to the Tribe Defendants under equitable principles of agency/alter-ego/veil piercing (the Tribe Defendants concede this for purposes of this appeal), and second, find that because the two are one, the Tribe Defendants did in fact file the underlying bankruptcy proceedings, thereby waiving their sovereign immunity as to all claims (including the avoidance claims alleged in this Adversary Proceeding) asserted as part of those underlying proceedings. The Litigation Trustee submits that if "Plaintiff were successful in establishing that the Debtors were the alter egos of the Tribe Defendants such that their respective corporate veils should be pierced, the Tribe Defendants' sovereign immunity is waived by operation of law, not by implication."

(Appellant's Br. 31.)

But even assuming without deciding that filing the underlying bankruptcy proceeding would be sufficient affirmative conduct on the part of the Tribe Defendants to clearly and unequivocally express their intent to waive their sovereign immunity to the fraudulent transfer claims at issue in this Adversary Proceeding (a claim that the Tribe Defendants contest), the Court must necessarily apply an equitable doctrine attributing legal significance to the Tribe Defendants' alleged conduct in controlling the Debtors, and then rely on that imputed conduct, to conclude that the Tribe Defendants unequivocally and clearly expressed their desire to waive their sovereign immunity to the claims asserted against them in this Adversary Proceeding. In urging the Court to adopt this admittedly unprecedented approach to waiver of sovereign tribal immunity, the Litigation Trustee relies principally on three cases: *Warburton/Buttner v. Superior Court of San Diego*, 103 Cal. App. 4th 1170 (Cal. Ct. App. 2002); *Private Solutions, Inc. v. SCMC, LLC*, No. 15-3241, 2016 U.S. Dist. LEXIS 88190 (D.N.J. July 6, 2016); and *United States ex rel. Morgan Bldgs. & Spas, Inc. v. Iowa Tribe of Oklahoma*, No. 09-730, 2010 WL 597125 (W.D. Okla. Feb. 16, 2010).

*Private Solutions* is easily disposed of as persuasive here because that case simply addressed the issue, admittedly not present here, of whether the defendant

limited liability company was an arm of the tribe and therefore able to enjoy the tribe's sovereign immunity. 2016 U.S. Dist. LEXIS 88190, at *5. The court concluded that the record was insufficient to permit a determination as to whether the corporate defendant's parent company was an economic subordinate entity entitled to enjoy tribal immunity. *Id*. at *9. The case did not address the issue of whether an Indian tribe could be held to have waived its sovereign immunity based on a finding of alter ego.

*Ex rel Morgan* is similarly unpersuasive as the issue there was whether a tribal entity that was the economic subordinate of another tribal entity could waive the sovereign immunity of its "parent" entity by waiving its own sovereign immunity. The court held that a waiver by a subordinate economic entity does not operate as a waiver of the sovereign immunity of the tribe. 2011 WL 308889, at *4. No such issue is presented here.

*Warburton* merits some discussion given some factual similarities to *Memphis Biofuels*. As the Litigation Trustee states in its principal brief on appeal, the court in *Warburton* "considered an issue identical to the issue presented in *Memphis Biofuels* . . . namely the effectiveness of a contractual waiver of sovereign immunity in the absence of a formal tribal resolution." (ECF No. 9, Appellant's Br. 31-32.) In *Warburton*, an agreement between Warburton and Defendant FNC, LLC (a limited

29

liability company formed under the laws of Delaware that was 50% – and later 100% – owned by Tunica-Beloxi tribe), contained a clause waiving the sovereign immunity of the tribe in any action brought by Warburton against FNC.  103 Cal. App. 4th at 1175.  That provision, however, was stricken out by interlineation pending the final tribal council approval and a formal board resolution.  The formal tribal resolution was never forthcoming.  *Id*. at 1176-77.  Despite the absence of a formal board resolution, Warburton sought to establish that the tribe, as a member of FNC, waived its sovereign immunity under a theory of common law alter ego liability.  *Id*. at 1190. The agreement between Warburton and FNC also contained the following language regarding tribal immunity: "Because it may be determined by a court of competent jurisdiction that First Nation is a tribally controlled entity, [the tribe] hereby agrees that it will not assert its Tribal Immunity in any action brought by [Warburton] to enforce any or all provisions of this agreement."  103 Cal. App. 4th at 1184 (alterations in original).  The agreement further stated that the anticipated (but never executed) tribal resolution waiving the tribe's sovereign immunity in any action brought by Warburton against FNC was "not intended as an admission by [Warburton] that First Nation enjoys the . . . Tribe's sovereign immunity."  *Id*.  The court in *Warburton* interpreted this language as "showing the anticipated separateness of First Nation and the Tribe that was allegedly fraudulently disregarded, giving rise

to the alter ego allegations." *Id*. Thus, despite the absence of a formal tribal board resolution, the court in *Warburton* was persuaded to consider whether FNC was actually a tribal controlled entity so that the court could give effect to the language of the agreement between Warburton and FNC that Warburton did not accept that FNC would enjoy the tribe's sovereign immunity. *Id*. at 1185.

There are certainly facts that distinguish *Warburton* from his case. But the most significant, and dispositive, problem with the Litigation Trustee's reliance on *Warburton* is that the *Warburton* court reached a result, *i.e.* that the plaintiff was entitled to discovery on an alter ego theory of liability against the tribe "despite the admitted lack of a formal resolution," (*see* 103 Cal. App. 4th at 1189), that directly conflicts with the Sixth Circuit's holding in *Memphis Biofuels*, i.e. that regardless of a written agreement purporting to waive sovereign immunity, where a tribal charter requires board approval, an express waiver of immunity will not be found absent a formal board resolution. 585 F.3d at 922-23. The Sixth Circuit would not have reached the alter ego issue presented in *Warburton* because it would never have proceeded beyond a determination that in the absence of a formal board resolution waiving immunity, no waiver could be found in the parties' agreements (written or otherwise). *Warburton* allowed for a possibility that the Sixth Circuit explicitly foreclosed in *Memphis Biofuels*: that "waiver [could be] permissibly accomplished

through contract," despite the absence of the required formal board resolution.  103 Cal. App. 4th at 1190.

"The alter ego doctrine is equitable in nature."  *Bucyrus-Erie Co. v. Gen'l Pdcts. Corp.*, 643 F.2d 413, 421 (6th Cir. 1981).  The Sixth Circuit in *Memphis Biofuels* expressly declined to apply an equitable doctrine, apparent authority, to circumvent the requirement of a duly adopted board resolution waiving immunity. The Litigation Trustee offers no persuasive authority suggesting that the Sixth Circuit would ignore *Memphis Biofuels* and apply an equitable doctrine here to defeat tribal immunity in the absence of sufficiently express board action.  This Court declines to adopt such an unprecedented theory of waiver of tribal immunity in reliance on *Warburton*, a California state case, in view of *Memphis Biofuels*, binding Sixth Circuit precedent that the Sixth Circuit has never disavowed.  The Sixth Circuit declined to apply equitable principles in *Memphis Biofuels* to defeat tribal sovereign immunity, even recognizing the potential inherent unfairness of its decision but concluding it was bound by precedent to recognize the tribe's immunity.  This Court is unconvinced that it would reach a different result here.  *See also Stillaguamish Tribe of Indians v. Pilchuck Grp. II, LLC*, No. 10-995, 2011 WL 4001088, at *6, 7 (W.D. Wash. Sept. 7, 2011) (following *Memphis Biofuels* and holding that tribal law controls determination of waiver of tribal immunity, that "state law plays no role in deciding whether a Tribe

has waived its sovereign immunity . . . and [that] where tribal law includes specific provisions governing immunity waivers, federal courts respect those provisions" refusing to apply principles of apparent authority and noting, as the Sixth Circuit did in *Memphis Biofuels*, that "[s]overeign immunity . . . is a doctrine whose application frequently leads to unfair results"); *MM&A Productions, LLC v. Yavapai-Apache Nation*, 316 P.3d 1248, 1253, 234 Ariz. 60 (Ariz. Ct. App. Div. 2, Jan. 16, 2014) ("[W]e agree with cases such as *Memphis Biofuels*, *Native American Distributing*, and *World Touch* that it would be inconsistent with United States Supreme Court precedent to apply equitable principles such as apparent authority to defeat a sovereign's immunity from suit.").

### 3. The FSIA cases do not provide a basis for finding a waiver of tribal sovereign immunity.

In a final attempt to apply alter-ego/veil piercing concepts to deny the Tribe Defendants immunity here, the Litigation Trustee relies on cases in which federal courts have applied alter-ego theories to find waiver of immunity by a foreign sovereign under the Foreign Sovereign Immunities Act ("FSIA"). *See First Nat'l City Bank v. Banco Para El Comercio Exterior De Cuba*, 462 U.S. 611, 633-34 (1983) (discussing the purpose and history of the FSIA and applying "internationally recognized equitable principles to avoid the injustice that would result from permitting

a foreign state to reap the benefits of our courts while avoiding the obligations of international law" and disregarding the separate juridical status of a foreign government's instrumentality); *Transamerica Leasing, Inc. v. La Republica De Venezuela*, 200 F.3d 843, 849-50 (D.C. Cir. 2000) (applying principles of agency to determine whether the acts of a foreign owned corporation were attributable to the foreign sovereign). The FSIA, however, invites such analysis by explicitly providing for waiver by implication: "A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case in which the foreign state has waived its immunity *either explicitly or by implication*." 28 U.S.C. § 1605(a)(1) (emphasis added). Thus, the FSIA expressly allows for that which the Supreme Court forbids in the case of Indian tribes – waiver by implication. The FSIA cases are inapt to the issue before this Court regarding the very unique brand of sovereign immunity enjoyed by Indian Tribes. *See Allen v. Gold Country Casino*, 464 F.3d 1044, 1047-48 (9th Cir. 2006) (refusing to apply the FSIA by analogy to an Indian tribe, noting that to do so would contravene Supreme Court precedent allowing no implied waiver in the case of Indian tribes).

## IV. CONCLUSION

As the Litigation Trustee concedes, this appeal presents an issue of first impression as neither the parties nor the Court has unearthed a case in which a court

has applied the equitable doctrines of alter-ego/veil piercing and/or agency to find that an Indian tribe waived it sovereign immunity. In the absence of a different directive from Congress or the Supreme Court or the Sixth Circuit limiting the breadth of tribal immunity, this Court is constrained to reject the Litigation Trustee's novel theory of implied waiver. The touchstone of the theory is the alleged conduct of the Tribe Defendants in controlling the Debtors and allegedly forcing the Debtors to initiate the underlying bankruptcy proceedings. This conduct, regardless of how the Litigation Trustee spins the theory, is the sole basis for implying a waiver that was not expressed through the required formal board resolution unequivocally consenting to suit on these MUFTA claims.

There is no evidence in this case of clear express language, unequivocally stating the Tribe Defendants' intent to consent to the filing of these MUFTA claims against them. It is difficult to see how, in light of the admonition that any waiver of tribal sovereign immunity "cannot be implied and must be unequivocally expressed," *Santa Clara Pueblo*, 436 U.S. at 58, and that such an expression must manifest the tribe's intent in "clear" and "unmistakable" terms, *Potawatomi*, 498 U.S. at 509, this Court can blaze a new trail and find a waiver of tribal immunity based upon theories of alter ego and veil piercing, doctrines that are equitable in nature and necessarily require a finding of liability by implication. "The doctrine of tribal sovereign

immunity may well be anachronistic and overbroad in its application . . . . But it remains the law of the land until Congress or the Supreme Court tells us otherwise." *Furry*, 685 F.3d at 1236-37. As the Sixth Circuit and many other courts have noted, often this may not seem to lead to a fair result, but this Court is bound to apply the law, not change it.

For the foregoing reasons, the Court AFFIRMS the September 29, 2016 Opinion and Order of the Bankruptcy Court GRANTING the Tribe Defendants' Motion to Dismiss and DISMISSING the Tribe Defendants WITH PREJUDICE from the Adversary Proceeding.

IT IS SO ORDERED.

s/Paul D. Borman<br>
Paul D. Borman<br>
United States District Judge

Dated: January 23, 2018

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 23, 2018.

s/Deborah Tofil<br>
Case Manager